# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE CO. and SENTINEL INSURANCE CO. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> INSTAGRAM, LLC as successor in interest to Instagram a/k/a Burbn, Inc.; META PLATFORMS, INC. f/k/a TheFacebook Inc. d/b/a The Face Book, Inc.; FEDERAL INSURANCE COMPANY; OLD REPUBLIC INSURANCE COMPANY; STARR INDEMNITY AND LIABILITY COMPANY; and ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendants. <br><br> FEDERAL INSURANCE COMPANY <br><br> Defendant and Counterclaim/Cross-Claim/Third-Party Plaintiff, <br><br> and, <br><br> WESTCHESTER SURPLUS LINES INSURANCE COMPANY; WESTCHESTER FIRE INSURANCE COMPANY; and ACE PROPERTY AND CASUALTY INSURANCE | ) ) ) ) ) ) ) ) C.A. No. N24C-11-010-SKR CCLD ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

COMPANY,                                 )
                                         )
                Third-Party Plaintiffs,  )
                                         )
        v.                               )
                                         )
HARTFORD CASUALTY                        )
INSURANCE COMPANY;                       )
SENTINEL INSURANCE                       )
COMPANY, LTD.; INSTAGRAM,                )
LLC as successor in interest to          )
Instagram a/k/a Burbn, Inc.; META        )
PLATFORMS, INC. f/k/a                     )
TheFacebook Inc. d/b/a The Face          )
Book, Inc.; OLD REPUBLIC                 )
INSURANCE COMPANY; STARR                 )
INDEMNITY AND LIABILITY                  )
COMPANY; ZURICH AMERICAN                 )
INSURANCE COMPANY;                       )
ALLIANZ GLOBAL CORPORATE                 )
& SPECIALTY SE; ARCH                     )
INSURANCE COMPANY; ARGO                  )
GROUP US; ASPEN AMERICAN                 )
INSURANCE COMPANY;                       )
CANOPIUS US INSURANCE,                   )
INC.; ENDURANCE AMERICAN                 )
SPECIALTY; FIREMANS FUND                 )
INDEMNITY CORPORATION;                   )
GEMINI INSURANCE                         )
COMPANY; GREAT AMERICAN                  )
INSURANCE COMPANY; GREAT                 )
AMERICAN SPIRIT INSURANCE                )
COMPANY; INTERSTATE FIRE &               )
CASUALTY COMPANY;                        )
IRONSHORE UK; LIBERTY                    )
MUTUAL INSURANCE EUROPE                  )
LTD.; THE LONDON MARKET                  )
INSURERS; NATIONAL FIRE &                )
MARINE INSURANCE                         )
COMPANY; NATIONAL UNION                  )

FIRE INSURANCE COMPANY OF )
PITTSBURGH, PA; RSUI )
INDEMNITY COMPANY; STARR )
SURPLUS LINES INSURANCE )
COMPANY; STARSTONE )
SPECIALTY INSURANCE )
COMPANY; STEADFAST )
INSURANCE COMPANY; and XL )
INSURANCE AMERICA, INC., )
)
      Third-Party Defendants. )

Submitted: November 10, 2025
Decided: February 27, 2026
Corrected: March 5, 2026[*]

## CORRECTED MEMORANDUM OPINION AND ORDER

*Defendants' Motion to Dismiss or Stay*: **DENIED.**

*Plaintiffs' Motion for Partial Summary Judgment*: **GRANTED.**

David J. Baldwin, Esquire, Peter C. McGivney, Esquire, BERGER MCDERMOTT LLP, Wilmington, Delaware, Martin H. Myers, Esquire, COVINGTON & BURLING LLP, San Francisco, California, Heather Habes, Esquire, COVINGTON & BURLING LLP, Los Angeles, California, *Attorneys for Defendants Instagram LLC and Meta Platforms, Inc.*

Thad J. Bracegirdle, Esquire, Sara T. Andrade, Esquire, Emily L. Skaug, Esquire, BAYARD, P.A., Wilmington, Delaware, James P. Ruggeri, Esquire, Sara K. Hunkler, Esquire, RUGGERI PARKS WEINBERG LLP, Washington, D.C., *Attorneys for Plaintiffs Hartford Casualty Insurance Company and Sentinel Insurance Company, Ltd.*

Stamatios Stamoulis, Esquire, STAMOULIS & WEINBLATT LLC, Wilmington, Delaware, Blair E. Kaminsky, Esquire, Daniel M. Horowitz, Esquire, Brian T. Goldman, Esquire, HOLWELL SHUSTER & GOLDBERG LLP, New York, New York, *Attorneys for Defendants and Cross-Complaint Plaintiffs Federal Insurance*

---

[*] This decision has been reissued to correct the inadvertent omission of National Fire & Marine Insurance Company's joinder from Footnote 11. No other amendments have been made.

*Company, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company, and ACE Property and Casualty Insurance Company.*

John Balaguer, Esquire, BALAGUER MILEWSKI & IMBROGNO LLP, Wilmington, Delaware, Timothy H. Wright, Esquire, SKARZYNSKI MARICK & BLACK LLP, Chicago, Illinois, *Attorneys for Defendant Zurich American Insurance Company and Third-Party Defendant Steadfast Insurance Company.*

John Balaguer, Esquire, BALAGUER MILEWSKI & IMBROGNO LLP, Wilmington, Delaware, Michael M. Marick, Esquire, Ellen D. Jenkins, Esquire, Andrew J. Candela, Esquire, SKARZYNSKI MARICK & BLACK LLP, Chicago, Illinois, *Attorneys for Defendant Starr Indemnity & Liability Insurance Company and Third-Party Defendant Starr Surplus Lines Insurance Company.*

Carmella P. Keener, Esquire, COOCH & TAYLOR PA, Wilmington, Delaware, Adam H. Fleischer, Esquire, Joshua A. Boggioni, Esquire, William D. Edwards, Esquire, BATESCAREY LLP, Chicago, Illinois, *Attorneys for Third-Party Defendants Aspen American Insurance Company and Great American Spirit Insurance Company.*

Matthew C. Nelson, Esquire, KENNEDYS CMK LLP, Wilmington, Delaware, *Attorney for Defendant Old Republic Insurance Company.*

Krista M. Reale, Esquire, MARGOLIS EDELSTEIN, Wilmington, Delaware, Michael J. DiSantis, Esquire, Natalie C. Metropulos, Esquire, TRESSLER LLP, Pittsburgh, Pennsylvania, *Attorneys for Third-Party Defendants Fireman's Fund Indemnity Corporation and Interstate Fire & Casualty Company.*

Karine Sarkisian, Esquire, KENNEDYS CMK LLP, Wilmington, Delaware, Kristen D. Perkins, Esquire, KENNEDYS CMK LLP, Fort Lauderdale, Florida, Cara Vecchione, KENNEDYS CMK LLP, Berkeley Heights, New Jersey, *Attorneys for Third-Party Defendant Endurance Risk Solutions Assurance Co. (captioned as Endurance American Specialty).*

John C. Phillips, Esquire, David A. Bilson, Esquire, PHILLIPS MCLAUGHLIN & HALL, P.A., Wilmington, Delaware, Andrew L. Margulis, Esquire, Jung H. Park, Esquire, ROPERS MAJESKI PC, New York, New York, *Attorneys for Third-Party Defendant National Fire & Marine Insurance Company.*

Loren R. Barron, Esquire, KAUFMAN DOLOWICH LLP, Wilmington, Delaware, David A. Tartaglio, Esquire, Stephen M. Green, Esquire, MUSICK, PEELER & GARRETT LLP, Los Angeles, California, *Attorneys for Third-Party Defendant Gemini Insurance Company.*

Robert J. Cahall, Esquire, MCCORMICK & PRIORE, P.C., Newark, Delaware, *Attorney for Third-Party Defendant National Union Fire Insurance Company of Pittsburgh, PA.*

Julie M. O'Dell, Esquire, Lauren A. Ferguson, Esquire, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware, *Attorneys for Third-Party Defendant XL Insurance America, Inc.*

**Rennie, J.**

## I. INTRODUCTION

Meta—the company behind social media platforms Facebook and Instagram—is embroiled in several thousand lawsuits regarding the harm its platforms allegedly cause children. Most of the suits have been consolidated into two actions in California (the "Social Media Litigation"). Here in Delaware, Meta's state of incorporation, Meta's insurers seek a declaration that they owe no duty to defend Meta in the Social Media Litigation.

Two motions are before the Court: Meta's Motion to Dismiss or Stay ("Meta's Motion") and Insurers' Motion for Partial Summary Judgment (the "Insurers' Motion"). Meta seeks to stay this action pending resolution of the Social Media Litigation or, in the alternative, as a matter of *forum non conveniens*. Conversely, Insurers seek a summary ruling that, under California law, the allegations in the Social Media Litigation do not trigger a duty to defend.

The Court concludes that: (i) a stay is neither required under California law nor warranted under Delaware law, and (ii) Insurers have established that the allegations in the Social Media Litigation do not trigger a duty to defend under the applicable Meta insurance policies.

Accordingly, Meta's Motion is DENIED and Insurers' Motion is GRANTED.

## II. BACKGROUND

### A. The Parties

Plaintiff Hartford Casualty Insurance Company ("Hartford Casualty") is an Indiana company with its principal place of business in Connecticut.[1] Hartford Casualty issued primary insurance coverage to "The Face Book, Inc." from 2004 to 2007.[2] Plaintiff Sentinel Insurance Company ("Sentinel," together with Hartford Casualty, "Hartford") is a Connecticut company with its principal place of business in Connecticut.[3] Sentinel issued primary insurance coverage to "Instagram a/k/a Burbn, Inc." from 2011 to 2012.[4]

Defendants and Cross-Complainant Plaintiffs include several entities under the Chubb Limited umbrella (collectively, "Chubb"):

- Federal Insurance Company ("Federal"): an Indiana corporation based in New Jersey that provided primary and umbrella general liability insurance to Facebook, Inc., from 2007 to 2016;[5]

- Westchester Surplus Lines Insurance Company ("Westchester Surplus"): a Georgia corporation based in Pennsylvania that provided

---

[1] Hartford's Amended Complaint (the "Amended Complaint") (D.I. No. 14) ¶ 3 (hereinafter "Am. Compl.").
[2] *Id.*
[3] *Id.* at ¶ 4.
[4] *Id.*
[5] *See* Chubb's Counterclaims, Cross Claims, and Third-Party Complaint (the "Chubb Complaint") (D.I. No. 15) ¶ 5 (hereinafter "Chubb Compl.").

excess general liability insurance policies to Facebook, Inc. from 2009 to 2011;[6]

- Westchester Fire Insurance Company ("Westchester Fire"): a Pennsylvania corporation based in Pennsylvania that issued excess general liability insurance to Facebook, Inc. from 2011 to 2016;[7] and

- ACE Property and Casualty Insurance Company ("ACE"): a Pennsylvania corporation based in Pennsylvania that issued umbrella liability insurance policies to Defendant Meta Platforms, Inc. from 2020 to 2023.[8]

Hartford and Chubb (together, the "Insurers") jointly filed the Insurers' Motion.[9] At least 17 other insurers are also defendants in the Delaware Action (the "Other Insurers").[10] A subset have joined the Insurers' Motion.[11]

---

[6] *Id.* at ¶ 6.

[7] *Id.* at ¶ 7.

[8] *Id.* at ¶ 8.

[9] *See* Insurers' Motion (D.I. 110) (hereinafter "Ins. Mot.")

[10] The Other Insurers are Old Republic Insurance Company; Starr Indemnity and Liability Company; Zurich American Insurance Company; Aspen American Insurance Company; Endurance American Specialty; Fireman's Fund Indemnity Corporation; Gemini Insurance Company; Great American Spirit Insurance Company; Interstate Fire & Casualty Company; National Fire & Marine Insurance Company; National Union Fire Insurance Company of Pittsburgh, PA; RSUI Indemnity Company; Starr Surplus Lines Insurance Company; Steadfast Insurance Company; and XL Insurance America, Inc. Notably, this is not the same list of insurance companies identified in the case caption—several insurers in the caption were subsequently voluntarily dismissed.

[11] Zurich American Insurance Company (D.I. 127), Steadfast Insurance Company (D.I. 128), Aspen American Insurance Company (D.I. 129), Great American Spirit Insurance Company (D.I. 130), Old Republic Insurance Company (D.I. 132), Fireman's Fund Indemnity Corporation and

Defendant Instagram, LLC ("Instagram LLC") is a Delaware limited liability company.[12]    Defendant Meta Platforms, Inc. ("Meta Platforms," together with Instagram LLC, "Meta" or "Defendants") is a Delaware corporation with its principal place of business in California.[13]

## B. The Underlying Litigation

The Social Media Litigation comprises thousands of lawsuits consolidated into two primary proceedings in California: a multidistrict litigation in the United States District Court for the Northern District of California, (the "MDL"), and a Judicial Council Coordination Proceeding in the Superior Court of California for the County of Los Angeles (the "JCCP").[14]

While the specific causes of action vary, they generally allege that Meta: (i) designed its platforms to maximize engagement by exploiting psychological vulnerabilities and embedding addictive features into the platforms; and (ii) intentionally targeted minors with these design choices.[15]

---

Interstate Fire & Casualty Company (D.I. 133), Endurance Risk Solutions Assurance Company (D.I. 135), National Fire & Marine Insurance Company (D.I. 136), and Gemini Insurance Company (D.I. 137).  Starr Indemnity & Liability Company and Starr Surplus Lines Insurance Company (together, "Starr") moved for summary judgment against Chubb instead of joining the Insurers' Motion.  (D.I. 131).  The Court uses its inherent authority to manage the docket to treat Starr's motion as another joinder to the Insurers' Motion.
[12] Am. Compl. ¶ 12.
[13] *Id.* at ¶ 11.
[14] *Id.* at ¶ 17.
[15] *Id.* at ¶ 18.

The Social Media Litigation has three classes of plaintiffs: individuals suing on behalf of children who used Meta's platforms (the "Individual Plaintiffs") (approximately 3,400 complaints);[16] school districts and local governments (the "School District Plaintiffs") (approximately 1,700 complaints);[17] and 43 states (the "State Plaintiffs").[18]  The Individual Plaintiffs seek recovery for the harms children exposed to the platforms allegedly experienced, including addiction, depression, and self-harm.[19]  The School District Plaintiffs and the State Plaintiffs seek recovery for the resources they expended to respond to the youth mental health crisis that allegedly arose out of children's exposure to Meta's platforms.[20]

After the commencement of the Social Media Litigation, Meta tendered the claims to the Insurers for defense costs.  The Insurers largely denied coverage, though they agreed to defend certain Individual Plaintiff claims subject to a reservation of rights.[21]

---

[16] *See* Request for Judicial Notice (D.I. 115) (hereinafter "RJN") Ex. 1 ("Individuals' MDL Complaint"); *see also* RJN Ex. 10 ("Individuals' JCCP Complaint").

[17] *See* RJN Ex. 2 ("School Districts' MDL Complaint"); *see also* Insurers' Mot. Ex. B ("School Districts' JCCP Complaint").

[18] *See* RJN Ex. 3 ("State AGs' MDL Complaint"); *see also* RJN Ex. 11 ("State AGs' JCCP Complaint").

[19] Am. Compl. ¶ 18.

[20] *Id.*

[21] *See, e.g., id.* at ¶ 41.

**C. The Coverage Litigation**

On November 1, 2024, Hartford commenced the instant litigation (the "Delaware Action") against Meta, Chubb, and certain of the Other Insurers.[22] Hartford filed the Amended Complaint on December 18, 2024, seeking declaratory judgment that it owes no duty to defend Meta against claims brought by (i) the School District Plaintiffs or State Plaintiffs (Count I), and (ii) the Individual Plaintiffs (Count II).[23]

On December 20, 2024, Chubb filed its Answer (the "Chubb Answer")[24] and the Chubb Complaint, a cross-complaint that largely mirrors the Amended Complaint. Additionally, Count IV of the Chubb Complaint seeks a declaration that, should Chubb be found to have a duty to defend Meta, then the Other Insurers are similarly liable.[25] To that end, Chubb joined the Other Insurers to this litigation as third-party defendants.

Meta removed the Delaware Action to federal court on December 27, 2024, seeking its transfer to the MDL.[26] Three days later, on December 30, 2024, Meta

---

[22] Specifically, Old Republic Insurance Company, Starr Indemnity and Liability Company, and Zurich American Insurance Company.

[23] Am. Compl. ¶¶ 47–68.

[24] *See* Chubb Answer (D.I. No. 15) (hereinafter "Chubb Ans.").

[25] Chubb Ans. ¶ 48.

[26] *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 1518041, at *2 (N.D. Cal. May 27, 2025) (hereinafter the "MDL Decision").

filed a self-described "parallel action" in the United States District Court for the Northern District of California (the "Federal Action").[27]

The Insurers subsequently moved to dismiss the Federal Action and remand the Delaware Action, arguing that the Delaware Action was first filed and thereby entitled to deference.[28] On May 27, 2025, the California federal court granted the Insurers' motion, remanding the case to Delaware state court.[29]

On July 23, 2025, Meta filed another parallel action, this time in California state court (the "California State Action").[30] Meta explicitly stated that this filing "was filed protectively" to ensure that Meta could continue to litigate these issues in California should this Court determine that Delaware law, rather than California law, governs the dispute.[31]

## D. The Present Motions

On July 24, 2025, Meta[32] and Insurers[33] filed their respective motions. The parties completed briefing on September 19, 2025, following the submission of

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *See* Meta's Motion (as amended, D.I. 175) (original, D.I. 116) at p. 14 (hereinafter "Meta's Mot.").
[31] *See* Meta's Reply Br. p. 2 (The California State Action "was filed protectively because coverage under the Policies is governed by California—not Delaware—law. Assuming the Court applies California law, Meta has no objection to proceeding here.").
[32] *See* Meta's Mot. (D.I. 175).
[33] *See* Insurers' Mot. (D.I. 110). Insurers' Motion is a motion for *partial* summary judgment because it seeks resolution of the duty to defend but not the duty to indemnify.

7

cross-answering and reply briefs.[34]  The Court heard oral argument on both motions on November 10, 2025, and took the matters under advisement (the "Transcript").[35]

This opinion follows.

### III.    META'S MOTION TO DISMISS OR STAY

**A. Party Positions**

*1. Meta's Position*

Meta moves to stay the Delaware Action pending resolution of the Social Media Litigation,[36] or in the alternative dismiss or stay the Delaware Action based on *forum non conveniens* or dismiss the Delaware Action for failure to state a claim pursuant to Superior Court Rule of Civil Procedure ("Rule") 12(b)(6).

Meta raises four primary arguments: First, Meta argues that a settled principle of California law mandates that the Court stay the Delaware Action until the Social Media Litigation is resolved.[37]  This principle—which Meta refers to as a "*Montrose* Stay"—dictates that coverage litigation *must* be stayed pending resolution of the underlying action when the coverage litigation "turns on facts to be litigated in the underlying action."[38]  Meta argues that the stay is mandatory regardless of a specific

---

[34] Insurers' Answering Brief (D.I. 160) (hereinafter "Insurers' Ans. Br."), Meta's Answering Brief (D.I. 161) (hereinafter "Meta's Ans. Br."), Meta's Reply Brief (D.I. 184) (hereinafter "Meta's Reply Br."), and Insurers' Reply Brief (D.I. 186) (hereinafter "Insurers' Reply Br.").
[35] *See* Transcript (D.I. 201) (hereinafter "Tr.").
[36] Meta's Reply Br. p. 14 ("Meta principally seeks to stay Insurers' action[.]").
[37] Meta's Mot. p. 17.
[38] *Id.* at p. 28 (quoting *Montrose Chem. Corp. v. Super. Ct.*, 861 P.2d 1154, 1162 (Cal. 1993) (hereinafter "*Montrose*")).

showing of prejudice, because the Delaware Action involves factual determinations central to the Social Media Litigation, including Meta's intent in creating the at-issue platform features, the causality of the alleged harms, and Meta's knowledge of those harms.[39]

Second, Meta argues that even if Delaware law applies, the Court should exercise its inherent authority to stay the proceeding to prevent prejudice.[40] Meta asserts that it is facing a "two-front war" where Insurers have effectively "joined forces" with the Social Media Litigation plaintiffs.[41] Factual findings in the Delaware Action, Meta warns, could improperly limit its defenses in the Social Media Litigation.[42]

Third, Meta argues that the Delaware Action should be dismissed under *forum non conveniens* in favor of the California State Action.[43] It contends that Delaware's only connection to the litigation is Meta's incorporation in the First State, and the California State Action can provide more comprehensive relief.[44]

---

[39] *Id.*

[40] *Id.* at p. 31.

[41] *Id.* at p. 32; *see also* Meta's Reply Br. p. 1 ("Meta is prepared to litigate in Delaware *after* the Social Media Cases are resolved and the risk of prejudice from simultaneous litigation is relieved.").

[42] *Id.*

[43] *Id.* at p. 25. Meta also argues that the Delaware Action should be stayed pending resolution of the Social Media Litigation, but the Court addresses the substance of this argument in conjunction with the *Montrose* Stay analysis.

[44] *Id.*

Finally, Meta moves to dismiss under Rule 12(b)(6), arguing that Insurers conceded a "potential for coverage" by agreeing to defend against certain claims by Individual Plaintiffs subject to a reservation of rights.[45]

### 2. Insurers' Position

To Meta's first point, the Insurers contend that California law does not mandate a *Montrose* Stay because the Court is not making *factual* determinations regarding Meta's intent, causality, or knowledge.[46] Instead, the Court's duty to defend is a "four corners" review of the *allegations* in the Social Media Litigation.[47] According to Insurers, determinations based on allegations, rather than facts, will not prevent Meta from fully litigating intent, causality, and knowledge in the underlying litigation; hence a *Montrose* Stay is inapt. The Insurers note that their own procedural posture reinforces this point—they only seek summary judgment on the duty to defend, which they argue can be resolved on the allegations, and not indemnification, which they concede could require discovery into the facts.[48]

To Meta's second point, the Insurers respond that Delaware law—not California law—should govern whether to grant a stay.[49] Under Delaware law, overlapping factual determinations do not automatically trigger a stay; rather,

---

[45] *Id.* at p. 33.
[46] *Id.* at p. 26.
[47] *Id.*
[48] *Id.* at p. 29.
[49] Insurers' Ans. Br. p. 25.

Insurers argue, Meta must demonstrate actual prejudice.[50]  Insurers assert that no "two-front war" exists because they seek summary judgment only on the duty to defend, which must be resolved early in the litigation to prevent insurers from paying indefinite defense costs they may never owe.[51]

To Meta's third point, the Insurers argue that Meta's *forum non conveniens* argument fails because Meta has not demonstrated that it faces overwhelming hardship from litigating in Delaware.[52]  Further, Insurers maintain that as the first-filed action, the Delaware Action is entitled to deference over Meta's later-filed "mirror image" suits in California.[53]

To Meta's fourth point, the Insurers maintain that their agreement to pay certain litigation expenses subject to a reservation of rights is a standard industry practice and not a legal concession of coverage.[54]  Consequently, they have not failed to state a claim upon which relief can be granted.

## B. Analysis

The Court addresses in turn (i) the *Montrose* Stay, (ii) the *forum non conveniens* argument in favor of a stay, (iii) the *forum non conveniens* argument in favor of dismissal, and (iv) Meta's Rule 12(b)(6) argument.

---

[50] *Id.*
[51] *Id.* at p. 31.
[52] *Id.* at p. 13.
[53] *Id.*
[54] *Id.* at p. 31.

### 1. The Montrose Stay

A *Montrose* Stay is a California doctrine providing that a coverage action must be stayed if it "may result in factual determinations that would prejudice the insured" in the underlying litigation.[55] The doctrine prevents an insurer from using a declaratory relief action to litigate factual issues that are central to the insured's liability in the underlying action.[56]

Under California law, a stay is mandatory if there is factual "overlap" between the coverage and underlying actions.[57] In such cases, the Court does not weigh specific prejudice. Delaware law has no direct equivalent; however, the Court maintains inherent authority to stay proceedings to promote judicial economy and prevent hardship.[58] Consequently, if California law applies, a stay is mandatory upon a finding of factual overlap; but if Delaware law applies, the stay remains within the court's sound discretion.

The parties dispute whether the stay is a substantive issue (governed by California law) or a procedural one (governed by Delaware law).[59] While the parties

---

[55] *GGIS Ins. Servs., Inc. v. Super. Ct.*, 86 Cal. Rptr. 3d 515, 525 (Cal. Ct. App. 2008).

[56] *Riddell, Inc. v. Super. Ct.*, 222 Cal. Rptr. 3d. 384, 393 (Cal. Ct. App. 2017).

[57] *See, e.g., id.* at 392 (citing standard).

[58] *See Brenner v. Albrecht*, 2012 WL 252286, at *4 (Del. Ch. Jan. 27, 2012) (citing *Joseph v. Shell Oil Co.*, 498 A.2d 1117, 1123 (Del. Ch. 1985)); *see also OneSource Virtual, Inc. v. Foster Poultry Farms, LLC*, 2024 WL 4544334, at *6 (Del. Super. Oct. 21, 2024) (applying *forum non conveniens* analysis to deny a stay in favor of a California action).

[59] *See* Insurers' Ans. Br. p. 25; Meta's Reply Br. p. 10. *See also, e.g., Travelers Cas. & Sur. Co. of Am. v. Blackbaud*, -- A.3d ----, 2026 WL 410048, at *1 (Del. Feb. 13, 2026) (applying New

have briefed this question at length, the Court does not reach it. Meta has not satisfied the standard for a stay under either jurisdiction's framework.

### i. Overlapping Factual Determinations

The threshold inquiry for a *Montrose* Stay is whether resolution of the coverage action requires factual determinations that overlap with the underlying litigation. The Court must first determine if resolving the duty to defend action requires making any factual determinations at all. The Court therefore looks to how a coverage action is resolved (under California law).

To resolve a duty-to-defend coverage action under California law, the Court must determine "[i]f any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy."[60] If so, the insurer has a duty to defend. "On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance."[61]

The Court's inquiry into the allegations begins by comparing the underlying complaints with the terms of the policy.[62] Rather than consider only the "pleaded

---

York substantive law and Delaware procedural law). *See* Tr. 35:15–18. (META'S COUNSEL: "Even if the stay is deemed procedural, the Court should enter one here. The Court can and should do so pursuant to its inherent authority because in light of all the facts, a stay would be in the interest of justice.").

[60] *GGIS*, 86 Cal. Rptr. 3d at 526 (quoting *Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 468 (Cal. 2005)).

[61] *Id.*

[62] *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993).

word" in the underlying complaints, the Court assesses whether the "factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation."[63]  In other words, California courts look beyond the exact phrasing of the complaints to determine whether they can *infer* a potential basis for coverage, even if it is not directly alleged.  Therefore, for purposes of a *Montrose* Stay, the Court looks to the allegations—including inferences—to decide whether it can resolve the coverage question on the allegations, or whether it will need to make factual determinations.

The Court concludes that the Delaware Action can be resolved without making factual determinations.  As discussed more fully in the Court's analysis of the Insurers' Motion, the conduct alleged in the Social Media Litigation—even when viewed through the lens of negligence—describes deliberate acts rather than accidents under the policies.  Because the Court's determination regarding Meta's intent is based strictly on the face of the underlying complaints, it does not "overlap" with the factual truth of the allegations to be litigated in California.

While California law provides that disputes over intentional acts are often stayed,[64]  that principle typically applies where a court must probe a subjective

---

[63] *Great Am. Ins. Co. v. Super. Ct.*, 100 Cal. Rptr. 3d 258, 270 (Cal. Ct. App. 2009); *see also Gray v. Zurich Ins. Co.*, 419 P.2d 168, 176 (Cal. 1966).
[64] *David Kleis, Inc. v. Super. Ct.*, 44 Cal. Rptr. 2d 181, 189 (Cal. Ct. App. 1995) (citing *Montrose*, 861 P.2d at 1162)).

mental state or a mistaken belief that the insured's conduct was lawful.[65]  These questions can require discovery into the purported wrongdoing, and the conclusions could ultimately constitute factual determinations regarding the insured's mindset—which the underlying plaintiff could leverage against the insured in the underlying litigation in direct contravention of the goals of a *Montrose* Stay.

Here, however, Meta's only bases for arguing that the complaints do not allege solely deliberate conduct can be resolved without making factual determinations. Meta argues that its conduct was accidental because some of the underlying complaints allege negligence-based causes of action.  To that end, Meta presents exemplar allegations that they contend demonstrate that the negligence causes of action resulted from conduct that was not intentional,[66] but—as the Court concludes below—those allegations allege negligence resulting only from *intentional* conduct. Accordingly, the Court reaches its determination regarding Meta's intent solely from what the complaints allege—Meta does not provide the Court a sufficient basis to reach any actual findings.  Indeed, as a matter of factual determination, Meta's intent remains fully unresolved.  The same conclusion applies to Meta's arguments regarding knowledge and causality—the Court makes its determinations solely on

---

[65] *Id.*

[66] *See* Tr. 25:8–17 (Argument by Meta's counsel that a determination that the intentional conduct exclusion applies would preclude Meta from raising negligence-based arguments in the Social Media Litigation).

15

the allegations (as presently constituted) without any form of factual inquiry into them or external information Insurers might have possessed.

Meta also argues that even if the factual allegations reflected by the complaints as they exist today do not provide a basis for coverage, Meta is entitled to a *Montrose* Stay because the complaints could be amended to allege issues that could require factual determinations. This argument is unavailing. While the Court has latitude to infer potential facts from the complaints, it cannot find a duty to defend in hypothetical scenarios or, as here, general assertions that the underlying facts could change.[67] Without a more specific articulation of how the allegations could change, the Court constrains its analysis to the factual allegations as expressly or inferentially raised in the underlying litigation.

Although the allegations themselves do not provide a basis for a *Montrose* Stay, Meta can still secure a stay if it can show that the Court may need to make factual determinations resulting from information outside the complaints (i.e., unknown to the underlying plaintiffs) but knowable to the insurers.[68] The threshold

---

[67] *See, e.g., All Green Elec., Inc. v. Sec. Nat'l Ins. Co.*, 231 Cal. Rptr. 3d 449, 457 (Cal. Ct. App. 2018) ("[Insured] points to no authority permitting an insured to manufacture hypothetical scenarios beyond those encompassed by the pleadings or the facts known to the insurer in order to give rise to a duty to defend."); *Upper Deck Co. v. Fed. Ins. Co.*, 358 F.3d 608, 615 (9th Cir. 2004) ("Mere speculation that the plaintiffs could or will allege [coverage-triggering] facts does not give rise to a duty to defend.").

[68] *See Gray v. Zurich Ins. Co.*, 419 P.2d at 177. *See also GGIS*, 86 Cal. Rptr. 3d at 525 ("A liability insurer has a duty to defend its insured if facts alleged in the complaint, *or other facts known to the insurer*, potentially could give rise to coverage under the policy.") (emphasis added).

question is whether there is any external information available. Meta presents a highly attenuated theory that Insurers have this information. Meta argues that because the Insurers have agreed to defend certain cases (albeit subject to a reservation of rights), the Court should infer that the Insurers possess extrinsic information that guided these coverage decisions.[69] Otherwise, Meta argues, the Insurers would have issued a blanket denial.[70] This argument is unpersuasive. While Insurers are defending certain cases, they did so subject to a reservation of rights.[71] A defense under a reservation of rights is not a concession that there is a basis for a duty to defend.[72] Indeed, an insurer may seek reimbursement for covering a claim that ultimately had no basis for coverage.[73] Meta's position is that an insurer lawfully acting in "an abundance of caution" with regard to the law is also conceding a factual basis for coverage, or least exposing itself to an inference that it relied on other, undisclosed information in tentatively agreeing to cover an action.[74] Meta does not provide support for this general theory or any indication that it happened here. Not only is the theory unsupported and unpersuasive, but its general nature would also make it applicable to any coverage action where the insurer agreed to

---

[69] Tr. 21:15–18 (META'S COUNSEL: "Taking into account the information they have already, they agreed there was a potential for coverage and they agreed to defend.").
[70] *Id.*
[71] Tr. 55:14–19.
[72] *Great Am. Ins. Co. v. Chang*, 2013 WL 3153279, at *9 (N.D. Cal. June 19, 2013).
[73] *Id.* (citing *Buss v. Super. Ct.*, 939 P.2d 766, 776 (Cal. 1997)).
[74] *Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d at 470.

17

provide coverage pending resolution of duty to defend litigation. Insurers would be incentivized to deny coverage in marginal cases rather than provide coverage pending litigation.

In summary, Meta has provided no basis for the Court to conclude that resolving this action requires factual determinations arising from the current allegations, foreseeable amendments, or extrinsic evidence. Accordingly, the Court finds that a mandatory stay in this action is not required under California law.

### ii. Prejudice Absent a Stay

The Court next considers whether Meta is entitled to a discretionary stay based on potential prejudice. Meta's arguments on this point are unavailing.

First, Meta contends that Insurers are providing "aid and comfort" to the underlying plaintiffs by (i) "parroting" the assertions that Meta acted intentionally, and (ii) seeking to "admit, validate, or establish" whether the underlying alleged injuries fall within specific policy periods.[75] The parroting argument is not convincing because, as previously noted, this Court's assessment of whether the underlying complaints *allege* intentional conduct is a legal inquiry that does not overlap with the factual determination of Meta's actual intent in the Social Media Litigation.

---

[75] Meta's Reply Br. p. 8.

Regarding the timing of injuries, Meta argues that discovery into whether plaintiffs fall within the Insurers' coverage windows will create a moving target.[76] But Meta fails to show how this discovery causes it legal prejudice. In fact, the risk of prejudice here falls on the *Insurers*, who may be forced to expend significant resources defending the claims that discovery eventually reveals are outside the coverage periods.

Second, Meta claims that it faces a "two front war," requiring it to defend this coverage action and the underlying litigation simultaneously. This argument is largely moot. Because the Court concludes herein that the Insurers owe no duty to defend, this litigation is effectively resolved. Any remaining costs to Meta would arise from an appeal, rather than ongoing discovery or trial preparation in this forum.

Further, a stay under these circumstances would prejudice the Insurers. An insurer's duty to defend must be assessed at the outset of a case.[77] Just as the insured is entitled to a prompt defense if coverage is possible, an insurer is entitled to a prompt exit when there is no potential for coverage.[78] Delaying this determination through a stay would force Insurers to fund a defense they do not legally owe.

---

[76] *Id.* at p. 9.

[77] *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 222 Cal. Rptr. at 278 (citing *Gray v. Zurich Ins. Co.*, 419 P.2d at 177)).

[78] *See Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d at 470 ("The insurer should be free, in an abundance of caution, to afford the insured a defense under a reservation of rights, with the understanding that reimbursement is available if it is later established, as a matter of law, that no duty to defend ever arose.").

Finally, Meta's concern regarding collateral estoppel resulting from relitigating any adverse factual findings arising out of this litigation is also moot.[79] Because the Court's ruling rests solely on the allegations in the Social Media Litigation—without the need for independent determinations or discovery—there are no adverse factual findings in this action that could bind Meta in the California proceedings.

Hence, a *Montrose* Stay is not merited in this action.

### 2. *Forum non conveniens—stay pending resolution of the Social Media Litigation*

Meta raises two *forum non conveniens*-related arguments in favor of California. Meta argues that the Delaware Action should be (i) stayed pending resolution of the Social Media Litigation or (ii) dismissed in favor of the California State Action.[80] "Where an action involving the same or similar parties and the same or similar issues is filed in another jurisdiction contemporaneously with or after the Delaware action, the *forum non conveniens* analysis applies."[81]

"The doctrine of *forum non conveniens* grants the court discretionary authority to decline jurisdiction where 'considerations of convenience, expense, and

---

[79] Meta's Mot. p. 32; Meta's Reply Br. p. 9.
[80] *See* Meta's Mot. p. 24 (arguing that the California State Action is more comprehensive, and the Court should thereby defer to it).
[81] *Zilberstein v. Frankenstein*, 2021 WL 5289104, at *2 (Del. Super. Nov. 12, 2021).

the interests of justice' show that the plaintiff's chosen forum would be 'unduly inconvenient, expensive, and otherwise inappropriate.'"[82]

Meta first argues that the Delaware Action should be stayed pending resolution of the Social Media Litigation as a matter of *forum non conveniens*.

Meta concedes that its stay-based *forum non conveniens* argument essentially mirrors its *Montrose* Stay request.[83] The intent in resolving a duty to defend at the earliest possible stage—to provide clarity for both the insured's defense strategy and the insurer's financial obligations—outweighs Meta's generalized claims that litigating insurers' duty to defend—in any forum—is inconvenient.[84] As Meta's argument in favor of a stay remains unpersuasive, the Court turns to Meta's proposed *forum non conveniens* dismissal of the Delaware Action in favor of the California State Action.[85]

---

[82] *Id.* at *3 (quoting *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 559 A.2d 1301, 1304 (Del. Super. 1988)).

[83] Meta's Reply Br. p. 13. ("Insurers are wrong that Meta must demonstrate "overwhelming hardship" to prevail on *forum non conveniens* grounds. Meta seeks a *Montrose* stay pending resolution of the Social Media Cases—not in favor of its protective California action.").

[84] *Id.* at p. 3 ("Meta seeks a stay of coverage litigation with Insurers in *all* fora, including California *and* Delaware, pending resolution of the Social Media Cases, to avoid prejudice."); *id.* at p. 14 ("Moreover, Meta's Motion to Dismiss is not "in favor of" the California lawsuit, which was filed to protect application of California law and would proceed simultaneously if the Court does not stay this case until the Social Media Cases are concluded.").

[85] While Meta attempts to frame its request for dismissal in favor of the California State Action as a stay, Meta also attempts to characterize the California State Action as a "more comprehensive" resolution to the dispute. (Meta's Mot. p. 24). Both cannot be true. "[A] stay has the same effect as a dismissal where '[a] stay in favor of another action results in the action in Delaware being put on hold until the resolution of the action in another jurisdiction, at which point principles of *res judicata* would likely apply [to bar the further prosecution of the Delaware action].'" *BP Oil*

21

### 3. Forum non conveniens—dismissal in favor of the California State Action

#### i. Forum Non Conveniens Standard

Delaware Superior Court Civil Rule 12(b)(3) governs a motion to dismiss or stay on the basis of *forum non conveniens*. Under Delaware law, the applicable *forum non conveniens* test varies based on the proceedings in this Court and the parties' litigation history. Generally, on a motion to dismiss, the Court accepts the complaint's well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. When, however, the motion to dismiss is one based on *forum non conveniens*, "this Court exercises its sound discretion when making findings of fact and drawing conclusions therefrom" by using "an orderly and logical deductive process."[86]

"'[D]espite linguistic appearance to the contrary, *forum non conveniens* is not a doctrine of convenience.' The phrase literally translates to 'forum not agreeing,' with the meaning of the phrase better understood as 'inappropriate' or 'unsuitable' forum."[87]

This Court applies the "*Cryo-Maid* factors" in making a *forum non conveniens* determination.[88] These factors are: (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises, if appropriate; (4) all other practical problems that would make the

---

*Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382, at *2–3 (Del. Super. Feb. 25, 2010) (quoting *In re Citigroup S'holder Litig.*, 964 A.2d 106, 117–18 Del. Ch. 2009)).

[86] *Arrowood Indem. Co. v. AmerisourceBergen Corp.*, 2023 WL 2726924, at *8 (Del. Super. Mar. 30, 2023) (internal citations omitted).

[87] *Cresa Glob. Inc. v. Chirisa Cap. Mgmt. (US) LLC*, 2025 WL 53168, at *1 (Del. Super. Jan. 9, 2025) (quoting *Aveta Inc. v. Colon*, 942 A.2d 603, 608 (Del. Ch. 2008); *Aranda v. Philip Morris USA Inc.*, 183 A.3d 1246, 1249 (Del. 2018)).

[88] *Arrowood*, 2023 WL 2726924, at *8.

trial of the case easy, expeditious and inexpensive; (5) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction; and (6) the pendency or non-pendency of a similar action in another jurisdiction.[89]

The Court uses one of three tests when analyzing these factors, with the sixth factor determining the applicable test.[90] First, when the Delaware case is the first-filed between the parties, the Court applies the "*Cryo-Maid* test," in which the defendant must overcome a presumption in favor of the plaintiff's choice by showing that litigation in Delaware will cause an "overwhelming hardship".[91] Second, when there is a prior pending case in another jurisdiction between the same parties involving the same issues, the Court applies the "*McWane* test," and presumes that it should grant the defendant's requested relief.[92] Third, when prior litigation between the parties has been dismissed and there is no other prior pending litigation

---

[89] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d 93, 101 (Del. 2021) (hereinafter "*GXP II*").

[90] *Id.* at 100; *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1195 (Del. Super. 2020) ("[T]he five original *Cryo-Maid* factors are examined for all *forum non conveniens* claims. And the later-added sixth pendency-of-other-cases factor fixes the background presumptions and thresholds against which those five factors are analyzed.") (hereinafter "*GXP I*").

[91] *Arrowood*, 2023 WL 2726924, at *8.

[92] *See McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281 (Del. 1970) (hereinafter "*McWane*"); *Arrowood*, 2023 WL 2726924, at *8.

between the parties, the Court applies the "*Gramercy* test" and does not make presumptions in favor of either party.[93]

No matter which test is applicable, to prevail, the defendant must always show a sufficient burden by the plaintiff's choice of Delaware as the forum in which to bring suit.[94]

### ii. Pendency of a Similar Action

*Cryo-Maid*'s "overwhelming hardship" test is appropriate here. Meta seeks dismissal of the Delaware Action in favor of the California State Action. The Delaware Action was filed first, on November 1, 2024.[95] Meta's first parallel action, the Federal Action, was not filed until December 30, 2024.[96] After the Federal Action's dismissal on May 27, 2025, Meta did not file its second parallel action—the California State Action—until July 23, 2025.[97]

Despite the two-month gap between the Delaware Action and the Federal Action (and the eight-month gap between the Delaware Action and the California State Action), Meta nevertheless contends that the actions were filed contemporaneously.[98] Under Delaware law, "[w]hen two cases are filed at

---

[93] *See Gramercy Emerging Mkts. Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033 (Del. 2017); *Arrowood*, 2023 WL 2726924, at *8.
[94] *In re CVS Opioid Ins. Litig.*, 2022 WL 3330427, at *3 (Del. Super. Aug. 12, 2022).
[95] D.I. 2.
[96] Meta's Mot. p. 12.
[97] *Id.* at pp. 13–14.
[98] Meta's Reply Br. p. 16.

approximately the same time, the court compares the fora without preference for one action over the other to avoid rewarding the victor in a 'race to the courthouse.'"[99] A two-to-eight month delay is outside the bounds of contemporaneity here.[100]

Any remaining doubt on the issue of contemporaneity is resolved by Meta's acknowledgement that the California State Action "was filed protectively" in case the Court determined that Delaware law applied in the Delaware Action.[101] There is no race to the courthouse between an action filed in one jurisdiction and a later-filed action in another initiated for the express purpose of serving as a jurisdictional counterbalance to the first action in case it concludes in an unfavorable result.

### iii. Ease of Access to Proof

Meta has failed to identify any discovery or witnesses that will be "stymied by litigating in Delaware."[102] Nor has Meta explained why the "workarounds" of modern methods of travel and information transfer would "be unavailable or

---

[99] *Id.* (quoting *GXP I*, 234 A.3d at 1195).
[100] *See Azurix Corp. v. Synagro Techs., Inc.*, 2000 WL 193117, at *3 (Del. Ch. Feb. 3, 2000) (next business day is contemporaneous); *Rosen v. Wind River Sys., Inc.*, 2009 WL 1856460 (Del. Ch. June 26, 2009) (eight business days); *In re Bay Hills*, 2018 WL 3217650, at *7 (eight days); *Zilberstein*, 2021 WL 5289104, at *4 (thirteen days); *Lincoln Benefit Life Co. v. Wilm. Tr., N.A.*, 2019 WL 1307870, at *1, *4 (Del. Super. Mar. 21, 2019) (one month). It is also important to note that Meta is a highly sophisticated business entity.
[101] Meta's Reply Br. p. 2 (The California State Action "was filed protectively because coverage under the Policies is governed by California—not Delaware—law. Assuming the Court applies California law, Meta has no objection to proceeding here.").
[102] *Cresa Glob. Inc*, 2025 WL 53168, at *3.

25

impracticable" in resolving any concerns regarding the locations of witnesses and data.[103] Meta has not demonstrated overwhelming hardship on this factor.

### iv. Availability of Compulsory Process

Under this factor, "the Court must evaluate whether 'another forum would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process.'"[104] To prevail on this factor, Meta "must identify the inconvenienced witnesses and the specific substance of their testimony."[105] Meta has not identified such witnesses.[106]

Meta's "position is further weakened by the reality that the witnesses in any insurance dispute will mostly be employees of the parties—i.e. witnesses who 'generally do not require compulsory process to obtain their appearance.'"[107]

Compulsory process does not weigh in favor of Delaware litigation as an overwhelming hardship.

---

[103] *In re CVS*, 2022 WL 3330427, at *7 (applying the *Cryo-Maid* overwhelming hardship test).
[104] *Id.* at *8 (quoting *Mt. Hawley Ins. Co. v. Jenny Craig, Inc.*, 668 A.2d 763, 769 (Del. Super. 1995)).
[105] *Monsanto Co. v. Aeta Cas. & Sur. Co.*, 559 A.2d 1301, 1308 (Del. Super. 1988).
[106] *See* Meta's Mot. p. 23 (rather than identify specific individuals, Meta avers generally that "Meta is not aware" of individuals "subject to process in Delaware.").
[107] *In re CVS*, 2022 WL 3330427, at *8 (quoting *Rosen v. Wind River Sys.*, 2009 WL 1856460, at *6).

### v. Possibility of View of the Premises

This factor is not applicable in this action, and Meta concedes that it carries no weight.[108]

### vi. Practical Considerations

The Court may weigh the "efficient administration of justice" and analogous considerations under the rubric of the "Other Practical Considerations" *Cryo-Maid* factor.[109] This includes evaluating whether the matters are duplicative or if another forum has already invested substantial efforts in the case.[110]

Meta argues that proceeding in Delaware when the Social Media Litigation is ongoing, risks "wasteful duplication" and "the possibility of inconsistent and conflicting rulings[,]" when the California State Action could provide relief without pulling another jurisdiction into the disputes.[111]

This factor is the most favorable to Meta. Meta correctly notes that the Social Media Litigation is currently overseen by capable California jurists who have managed the underlying complexities for years. Indeed, both Meta and Insurers have bandied about various quotes from the MDL that they purport are dispositive on many of the issues addressed here. Efficiency often favors the same court presiding

---

[108] Meta's Mot. p. 33.
[109] *Martinez v. E.I. duPont de Nemours and Co., Inc.*, 86 A.3d 1102, 1113 (Del. 2014).
[110] *Zilberstein*, 2021 WL 5289104, at *5 (citing *Hamilton P'rs v. Englard*, 11 A.3d 1180, 1217 (Del. Ch. 2010)).
[111] Meta's Mot. p. 26 (quoting *McWane*, 263 A.2d at 283).

27

over both liability and coverage if the coverage action requires navigating evolving complaints or extensive discovery.

However, that is not the posture here. This Court is making a legal determination based on a point-in-time snapshot of the allegations in the Social Media Litigation. As established in the *Montrose* Stay analysis, Meta has not shown that the prospective amendments would undermine the Court's conclusion that Meta's alleged conduct was intentional rather than accidental. Consequently, Delaware is not unduly entangling itself in the Social Media Litigation.

Meta further argues that the California State Action is superior because it includes breach of contract and bad faith claims, making it more comprehensive.[112] Yet that action boils down to the same core issue as the Delaware Action—the Insurers' duty to defend.[113]

Accordingly, this factor does not favor Meta.

**vii.    Applicability of Delaware Law**

This factor focuses on Delaware's interest in the litigation.[114]

---

[112] Meta's Reply Br. p. 21.

[113] *See In re CVS*, 2022 WL 3330427, at *11 (finding that out of state litigation was "in every substantive feature a doppelgänger coverage dispute . . . [b]oth actions boil down to the same core issue[.]").

[114] *See BCORE Timber EC Owner LP v. Qorvo US, Inc.*, 2023 WL 2985250, at *6 (Del. Super. Apr. 18, 2023) (the factor "centers on 'whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction.'") (quoting *Martinez*, 86 A.3d at 1104); *GXP II*, 253 A.3d at 105 ("[T]he choice of law factor, while relevant to establishing hardship and inconvenience, primarily focuses on

Delaware's connection to this litigation is that Defendants are incorporated here. "Delaware has an interest in regulating the conduct of entities formed under its laws, and this public interest can weigh against granting *forum non conveniens* relief."[115] While that interest is strongest in cases involving issues of "substantive corporate governance and structure," that does not negate Delaware's "general—but important—interest in providing a forum for resolving disputes involving its corporate citizens," although that interest "can be outweighed by the hardship occasioned from the other factors[.]"[116]

To be clear, the Court resolves the question of whether Insurers have a duty to defend under California law. But even in cases where the alternative jurisdiction has a clear cut "greater interest in applying its substantive law . . . the choice-of-law factor [has not risen] to the overwhelming hardship standard."[117] Rather, "Delaware courts are well-equipped to apply California law, especially where there are no novel

'Delaware's interest in the litigation,' a focus evident in the phrasing of the factor itself.") (quoting *Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264, 271 (Del. 2001)).
[115] *GXP I*, 234 A.3d at 1198.
[116] *Id.*
[117] *Royal Indem. Co. v. Gen. Motors Corp.*, 2005 WL 1952933, at *8 (Del. Super. July 26, 2005).

or open questions present."[118]  In fact, Meta concedes its willingness to proceed in Delaware as long as the Court applies California law.[119]

Hence, this factor does not weigh in favor of dismissal.  Even if "[t]he only salient connection between this action and Delaware is the named entities' incorporation or registration . . . that alone can't support any finding of overwhelming hardship."[120]  This factor weighs in favor of dismissal when considered alongside the "totality of the other pertinent factors[,]" and Meta has not provided the Court a basis to conclude that there is overwhelming hardship.[121]

### viii.   Conclusion

Meta has failed to show why any of the *Cryo-Maid* factors render litigating in Delaware an overwhelming hardship.  Moreover, a holistic review of the circumstances—particularly given the weight favoring Delaware—does not alter the Court's determination.  Consequently, the Court will not dismiss this first-filed action.

---

[118] *GXP II*, 253 A.3d at 104–05 (affirming *forum non conveniens* in favor of California under a *Gramercy* test).  Of course, the Court is not limited to considering settled issues. *See Berger v. Intelident Sols., Inc.*, 906 A.2d 134, 137 (Del. 2006) (holding that Delaware often decides "unsettled" legal issues under the law of other jurisdictions).

[119] Meta's Reply Br. p. 2 ("Assuming the Court applies California law, Meta has no objection to proceeding here.").

[120] *BCORE Timber*, 2023 WL 2985250, at *8 (granting motion to dismiss for forum non conveniens because defendant demonstrated overwhelming hardship).

[121] *Id.*

### 4. Failure to State a Claim

### i.       Standard

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must determine "whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[122]  Under that standard, the Court accepts all of the non-movant's well-pleaded allegations as true and draws all reasonable inferences in favor of the non-movant.[123]  Delaware's pleading standard affords a liberal construction to a claimant.[124]  However, the Court does not accept "conclusory allegations that lack specific supporting factual allegations."[125]

### ii.      Discussion

Meta moves to dismiss the Insurers' declaratory claims on two grounds: (i) that Insurers conceded a potential for coverage by defending certain claims under a reservation of rights,[126]  and (ii) that the inclusion of negligence-based causes of action in the Social Media Litigation complaints inherently triggers a potential for "accident" coverage.[127]

---

[122] *RGIS Int'l Transition Holdco, LLC v. Retail Servs. WIS Corp.*, 2024 WL 568515, at *4 (Del. Super. Feb 13, 2024) (quoting *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. 2018)).
[123] *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 199 (Del. Super. 2020).
[124] *Travelers Cas. and Sur. Co. of Am. v. Blackbaud, Inc.*, 2024 WL 1298762, at *6 (Del. Super. Mar. 27, 2024).
[125] *Id.*
[126] Meta's Mot. p. 33.
[127] *Id.* at p. 34.

Neither argument is well-taken. First, as a matter of law, an insurer's agreement to defend subject to a reservation of rights does not constitute a concession of a duty to defend or a waiver of its right to contest coverage.[128] Second, the mere labeling of claims as negligence does not automatically establish a potential for coverage or an accident.[129] Under California law, the Court must look past the legal labels to the factual conduct alleged. If the underlying conduct—such as the intentional design of platform features—is strictly deliberate, the presence of a negligence count does not create a duty to defend.[130] Because the Insurers have pleaded a reasonably conceivable basis for a declaration of no coverage, the Court denies Meta's Motion to Dismiss under Rule 12(b)(6).

## C. Conclusion

For the foregoing reasons, Meta's Motion to Dismiss or Stay the Delaware Action is **DENIED**.

---

[128] Indeed, as noted in the *Montrose* Stay analysis above, insurers defending subject to a reservation of rights not only do not concede coverage; they are entitled to pursue a claim for reimbursement for over-defending the insured if they prevail in the coverage action. *Great Am. Ins. Co. v. Chang*, 2013 WL 3153279, at *9; *see also Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d at 470 (The insurer should be free, in an abundance of caution, to afford the insured a defense under a reservation of rights, with the understanding that reimbursement is available if it is later established, as a matter of law, that no duty to defend ever arose.").

[129] Insurers' Ans. Br. p. 33.

[130] *See, e.g., Ghukasian v. Aegis Sec. Ins. Co.*, 292 Cal. Rptr.3d 923, 928 (Cal. Ct. App. 2022) (finding intentional conduct exclusion applied to negligence cause of action when the harm was the result of the intended—if misinformed—conduct, not inadvertent behavior).

## IV. INSURERS' MOTION FOR SUMMARY JUDGMENT

### A. Standard

Summary judgment is appropriate under Rule 56 only if there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law.[131] The Court must view the record "in the light most favorable to the non-moving party."[132] If the record reveals that material facts are in dispute, then summary judgment must be denied.[133]

In a declaratory relief action concerning a duty to defend, "the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*"[134] Put differently, "an insurer may be excused from a duty to defend only when 'the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.'"[135] "[I]f coverage depends on an unresolved dispute over a *factual* question, the very existence of that dispute would

---

[131] Del. Super. Ct. Civ. R. 56(c).
[132] *Merrill v. Crothall–Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).
[133] *IDT Corp. v. U.S. Spec. Ins. Co.*, 2019 WL 413692, at *5 (Del. Super. Ct. Jan. 31, 2019).
[134] *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 326 P.3d 253, 258–59 (Cal. 2014) (quoting *Montrose,* 861 P.2d at 1153) (emphasis in original).
[135] *Id.*

not only result in a denial of the motion, but also establish a possibility of coverage and thus a duty to defend."[136]

## B. Party Positions

### 1. Insurers' Position

Insurers move for a summary declaration that they owe no duty to defend Meta in the Social Media Litigation.[137]  While the Insurers raise multiple arguments, the Court focuses its resolution on the threshold issue: whether the underlying lawsuits allege harm caused by an "accident."  Because the Court resolves this issue in the Insurers' favor, it does not reach the Insurers' other arguments.

The applicable insurance policies provide that the duty to defend is triggered by suits seeking damages for bodily injury "caused by an Occurrence."[138]  The parties agree that "Occurrence" is synonymous with accident, and that California law governs this interpretation.[139]

Under California law, an accident is "an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause."[140]

---

[136] *McMillin Cos., LLC v. Am. Safety Indem. Co.*, 183 Cal. Rptr. 3d 26, 37 (Cal. Ct. App. 2015).
[137] As noted above, although the Insurers seek a declaration regarding the duty to indemnify, the Insurers seek summary judgment only on the duty to defend.
[138] Insurers' Mot. p. 12.
[139] *See* Insurers' Mot. p. 12, Meta's Ans. Br. p. 13.  *See also Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 418 P.3d 400, 403 (Cal. 2018) (hereinafter "*Ledesma*") ("As a general matter, the meaning of the term "accident" in a liability insurance policy is settled in California.").
[140] *AIU Ins. Co. v. McKesson Corp.*, 2024 WL 302182, at *2 (9th Cir. Jan. 26, 2024) (hereinafter "*McKesson*") (quoting *Ledesma*, 418 P.3d at 403).

But "[a]n accident does not occur when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage."[141]

When parties dispute whether the underlying allegations allege an accident or exclusively deliberate conduct, the Court's task is essentially a two-step inquiry: (1) do the complaints in the Exemplar Suits allege "anything other than strictly deliberate conduct[;]" and (2), if not, do they allege an "additional, unexpected, independent, and unforeseen happening" that may have produced the damage.[142] If the answer to both questions is no, then the Court must conclude that there is not a possibility that the allegations allege anything other than intentional conduct, and the insurer thereby has no duty to defend. Insurers contend that the answer to both questions is "no".

First, the Insurers argue that the underlying complaints exclusively allege deliberate conduct centered on Meta's "deliberate design choices."[143] They point to the allegations that Meta "intentionally design[ed]" or "chose" to "design[] its social media platforms to attract and addict youth."[144]

---

[141] *Navigators Specialty Ins. Co. v. Moorefield Constr., Inc.*, 212 Cal. Rptr. 3d 231, 245 (Cal. Ct. App. 2016) (hereinafter "*Navigators*").
[142] *McKesson*, 2024 WL 302182, at *1 (quoting *Navigators*, 212 Cal. Rptr. 3d at 245).
[143] Insurers' Mot. p. 14
[144] *Id.* at pp. 14–17.

Insurers argue that the complaints do not need to allege that Meta *intended* to cause harm, just that Meta intended to engage in certain conduct, and that conduct resulted in harm.[145] In support, the Insurers assert that Meta's subjective intent to cause harm is irrelevant;[146] the acts themselves (the design choices) were intentional.[147] Because the harm allegedly flowed directly from these deliberate choices, the Insurers argue that the "accident" requirement is not met.

Insurers further contend that the inclusion of negligence counts does not change this result. They argue that these are legal labels of negligence that derive solely from intentional conduct. Under California law, "[w]here 'the underlying action alleges a cause of action for negligence, [but] the factual allegations reflect intentional acts,' there is no duty to defend."[148] "It is thus a 'misapprehension' to conclude 'that all claims for negligence must at least potentially come within [a] policy and therefore give rise to a duty to defend [because] "[n]egligent" and "accidental" are not synonymous.'"[149]

On the second step, Insurers argue that the complaints fail to identify an intervening "unforeseen happening" between Meta's intentional design choices and the resulting injuries. Instead, the complaints allege that Meta designed its products

---

[145] *Id.* at pp. 12–13.
[146] *Id.*
[147] *Id.*
[148] *Id.* (quoting *Ghukasian*, 292 Cal. Rptr. 3d at 928).
[149] *Id.* (quoting *Quan v. Truck Ins. Exch.*, 67 Cal. App. 4th 583, 596 (1998)).

specifically to maximize engagement, making the resulting injuries a foreseeable consequence of that design.[150]  Finally, the Insurers argue that the actions of third-party content creators are not unforeseen happenings, but rather the predictable result of Meta's platform architecture.[151]

### 2. Meta's Position

Meta contends that the Insurers owe a duty to defend because a potential for coverage exists as long as there is a possibility of liability sounding in negligence.[152] Relying on *Gray v. Zurich Insurance Co.*, Meta argues that the presence of intentional torts allegations in the same complaint does not negate the potential for a covered occurrence.[153]  Because each class of plaintiffs in the underlying litigation has alleged some form of negligence, Meta argues that the Insurers must defend the Social Media Litigation in its entirety.[154]

Meta further asserts that under California law, an "accident" is construed expansively to include situations where either the act or its consequences are unintended or unforeseen from the insured's perspective.[155]  From Meta's view, the

---

[150] *Id.* at p. 22.
[151] Insurers' Reply Br. p. 11.
[152] Meta's Ans. Br. p. 14.
[153] *Id.* (citing *Gray v. Zurich Ins. Co.*, 419 P.2d at 176).
[154] *Id.* (providing examples); *see also id.* at p. 15 (citing *Buss v. Super. Ct.*, 939 P.2d 766, 775 (Cal. 1997) (holding that insurers have a duty to defend mixed actions in their entirety)).
[155] *Id*. at p. 16 (citing *Ledesma*, 418 P.3d at 408 (sexual assault claim was an unexpected consequence); *Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co.*, 334 P.2d 881, 884–85 (Cal. 1959) (defect in intentionally distributed product was unforeseen); *Meyer v. Pacific Emp'rs Ins.*

design choices constitute an accident because it did not intend to cause the resulting harm, such as addiction or depression.

Meta further argues that the alleged harms constitute an "accident" even if Meta was, as Insurers claim, "aware of" the potential risks.[156] Drawing an analogy to the asbestos litigation context, Meta notes that the California Court of Appeals has distinguished general knowledge of potential harm from the specific awareness that harm is practically certain to occur.[157]

Moreover, Meta argues that even if the underlying complaints allege that Meta's design choices were deliberate, they still support the possibility that injuries resulted from unforeseen happenings.[158] Meta reiterates that an "accident" occurs when a deliberate act triggers an unexpected or independent intervening event.[159] To that end, Meta argues that harmful user-generated content was "the non-foreseeable intervening conduct of third parties."[160]

---

*Co.*, 43 Cal. Rptr. 542, 547 (Cal. Ct. App. 1965) (damage to neighboring building from intentionally drilling a water well was unexpected)).

[156] *Id.* at p. 17.

[157] *Id.* (citing *Armstong World Indus., Inc v. Aetna Cas. & Sur. Co.*, 52 Cal. Rptr. 2d 690, 723 (Cal. Ct. App. 1996)).

[158] *Id.* at p. 19.

[159] Meta's Ans. Br. p. 20 (citing *State Farm Fire & Cas. Co. v. Super. Ct.*, 78 Cal. Rptr. 3d 828, 836 (Cal. Ct. App. 2008) (impact with concrete step was an unexpected result from intentionally throwing someone in a pool); *Ledesma*, 418 P.3d at 408 (sexual assault by employee was an unforeseen consequence of hiring the employee).

[160] *Id.* ("*See, e.g.*, RJN, Ex. 22 at 66 (finding that certain Individual Plaintiffs' allegations "seek to hold Defendants liable for publishing third-party content"); *id.*, Ex. 24 at 2 ("certain sets of [School District Plaintiffs'] allegations involve the non-foreseeable intervening conduct of third parties").").

Finally, Meta maintains that summary judgment is premature. Because the allegations in the Social Media Litigation are "continuously evolving," Meta contends that the factual record is not yet sufficiently developed to allow the Court to determine whether the duty to defend has been triggered as a matter of law.[161]

## C. Analysis

Insurers have accurately stated the analytical framework. Under the relevant policies, the Insurers' duty to defend is triggered only by suits seeking damages caused by an "accident."[162] Because the California courts have developed extensive jurisprudence defining an accident in the context of liability insurance,[163] the parties agree that California law governs the dispute.[164] Insurers contend that they owe no duty to defend because the Social Media Litigation alleges strictly deliberate, non-accidental conduct.[165] Meta counters that the underlying complaints allege damages caused by an accident or, in the alternative, that the underlying plaintiffs will amend the complaints to allege accidental occurrences.

---

[161] *Id.* at p. 31 (citing *US Dominion, Inc. v. Newsmax Media, Inc.*, 2025 WL 1092289, at *11 (Del. Super. Apr. 9, 2025)).

[162] *Id.*

[163] *See Ledesma*, 418 P.3d at 403 ("As a general matter, the meaning of the term "accident" in a liability insurance policy is settled in California.").

[164] Insurers' Mot. p. 12; Meta's Ans. Br. p. 13.

[165] *Id.*

To determine whether an accident occurred, the Court focuses on the conduct of the insured (i.e., Meta).[166] Under California law, this involves a two-step inquiry to assess the allegations in the underlying complaint: (1) whether the complaints allege anything other than strictly deliberate conduct;[167] and (2) if not, whether the complaints nonetheless identify "some additional, unexpected, independent, and unforeseen happening" that may have produced the damage.[168]

The Court addresses each step in turn.

### 1. Step One: Strictly Deliberate Conduct

Upon review of the California case law, the relevant policies, and the Social Media Litigation complaints, the Court concludes that the underlying actions exclusively allege harm arising from deliberate conduct. Meta concedes that the conduct at issue is its intentional design and implementation of the platform features aimed at maximizing user engagement.[169] Meta's primary argument against this finding is the presence of negligence-based causes of action. Meta contends that because some plaintiffs alleged that it "should have known" that its design choices could cause harm, the conduct cannot be characterized as strictly deliberate.

---

[166] *See Ledesma*, 418 P.3d at 403 ("A policy providing a defense and indemnification for bodily injury cause by "'an accident' 'promise[s] coverage for liability resulting from the *insured*'s negligent acts.'") (quoting *Safeco Ins. Co. of Am. v. Robert S.*, 28 P.3d 889, 894 (Cal. 2001)).

[167] *McKesson*, 2024 WL 302182, at *1.

[168] *Id.*

[169] Tr. 128:3–5 (META'S COUNSEL: "And our position is that we created an app that plaintiffs allege through our negligence cause[s] addiction and harm.); Meta's Ans. Br. p. 15.

The mere presence of negligence allegations or causes of action does not, by itself, trigger the duty to defend. California courts have repeatedly held that when a negligence claim arises from factual allegations of intentional conduct, the underlying complaints allege exclusively deliberate conduct.[170] "The scope of the duty [to defend] does not depend on the labels given to the causes of action; instead it rests on whether the *alleged facts or known extrinsic facts* reveal a possibility that the claim may be covered by the policy."[171]

Consequently, the proper inquiry is not whether the underlying complaints raise negligence causes of action or use the word negligence in their allegations. Rather, the Court must determine whether the complaints—once stripped of the underlying plaintiffs' legal characterizations—still allege exclusively deliberate conduct.

Just as the Court examines the allegations without the plaintiffs' "gloss," it assesses whether they describe strictly deliberate conduct based on whether the insured performed the acts in question, regardless of its intended outcome or reason for doing so. "California courts have repeatedly held [that] 'where the insured intended all of the acts that resulted in the victim's injury, the event may not be

---

[170] *Ghukasian*, 292 Cal. Rptr. 3d at 928 (insured's contractors entered a neighbor's property and intentionally cut down trees—the damage to the property was the result of intentional conduct, not from, e.g., "inadvertently dropping equipment").

[171] *Id.* (citing *Cunningham v. Universal Underwriters*, 120 Cal. Rptr. 2d 162, 167 (Cal. Ct. App. 2002)).

deemed an 'accident' merely because the insured did not intend to cause injury.'"[172]

Indeed, the insured's "subjective intent" in engaging in the conduct is "irrelevant" to this inquiry;[173] the term "accident" refers to the nature of the act giving rise to the liability, not to the insured's intent to cause harm.[174]

Meta presents two categories of negligence allegations to support its claim of accidental conduct: (i) negligence in designing the platforms, and (ii) negligence in communicating that the platforms were safe.

### i.    Negligence in Designing the Platforms

Meta argues that because the underlying complaints allege that it was negligent in the design of its platforms,[175] the litigation does not involve exclusively deliberate conduct.[176]

California case law, however, takes a broad view of what constitutes exclusively deliberate conduct by a corporate actor. In determining whether a duty

---

[172] *Thompson v. Crestbook Ins. Co.*, 296 Cal. Rptr. 3d 138, 145 (Cal. Ct. App. 2022) (quoting *Merced Mutual Ins. Co. v. Mendez*, 261 Cal. Rptr. 273, 279 (Cal. Ct. App. 1989)).
[173] *Id.*
[174] *State Farm Gen. Ins. Co. v. Frake*, 128 Cal. Rptr. 3d. 301, 309 (Cal. Ct. App. 2011) (hereinafter "*Frake*"). To be sure, certain earlier cases concluded that "accident" could refer to unintended conduct *or* unintended harm. *See, e.g., State Farm Fire & Cas.*, 78 Cal. Rptr. 3d at 833. However, these cases predated the California Supreme Court case *Delgado v. Interinsurance Exch. of the Auto. Club of Southern Cal.*, 211 P.3d 1083 (Cal. 2009). *Frake* explains that *Delgado* "clarified . . . the definition of "accident" . . . to refer[] to the injury-producing acts of the insured[,]" and "an intentional act is not transformed into an accident merely because the insured was operating under some mistake of fact." *Frake*, 128 Cal. Rptr. 3d at 314. Accordingly, it is no longer good law that an accident can arise merely from unintended harm.
[175] Meta highlights, *inter alia*, Individuals' MDL Compl. ¶ 884; Individuals' JCCP Compl. ¶ 884; School Districts' MDL Complaint ¶¶ 1035, 1040; New Hampshire Complaint (RJN Ex. 12) ¶ 317.
[176] Meta's Ans. Br. p. 6.

to defend exists, courts prioritize the factual nature of the acts over the legal labels attached to them. Key cases illustrate this principle: in *Traveler's Property Casualty Co. of America v. Actavis*, the California Court of Appeals concluded that allegations of a "common, sophisticated, and highly deceptive marketing campaign" to increase opioid sales could only describe "deliberate, intentional acts[,]" regardless of any negligence theories.[177] In *James River Insurance Co. v. SureFire*, a federal court applying California law found no duty to defend a gun accessory manufacturer against negligence claims stemming from a mass shooting.[178] The court ruled that the claims addressed the company's intentional marketing decisions rather than accidental mistakes, noting that the complaint did not allege a "mistake" (e.g., a typo or misprint) in the company's advertising.[179] In *AIU Insurance Co. v. McKesson Corp.*, the Ninth Circuit affirmed that the insured pharmaceutical distributor's methods constituted deliberate acts because the complaints did not allege "conduct which [the insured] plausibly could have engaged in by accident" and never alleged that such conduct was accidental.[180]

In each of these cases, California courts assessed whether conduct was exclusively deliberate by examining the overarching purpose of the acts and

---

[177] *Travelers Prop. Cas. Co. of Am. v. Actavis, Inc.*, 225 Cal. Rptr. 3d 5, 18 (Cal. Ct. App. 2017) (internal quotations omitted).
[178] *James River Ins. Co. v. SureFire, LLC*, 2025 WL 1287891, at *9 (C.D. Cal. Mar. 6, 2025) (note that this decision is currently on appeal).
[179] *Id.*
[180] *McKesson*, 2024 WL 302182, at *2.

determining whether the complaints alleged any truly inadvertent or nonvolitional behavior. Because Meta's platform design choices—as alleged—were voluntary business decisions aimed at increasing engagement, they fall squarely within this broad definition of deliberate conduct.

This expansive view is reinforced by more "grounded" precedents like *Ghukasian v. Aegis Security Insurance Co.,* and *Albert v. Mid-Century Insurance Co*. In both cases, the act of hiring and directing contractors to landscape specific areas was held to be strictly deliberate.[181] Although the insureds argued that they mistakenly believed that they owned the property, the courts held that such a mistake was "irrelevant" to the deliberate acts inquiry. Because the contractors did not engage in inadvertent or nonvolitional conduct—such as dropping a chainsaw—the acts remained strictly deliberate regardless of the insureds' subjective intent.

To determine whether the Social Media Litigation complaints allege inadvertent conduct by Meta, the Court looks to the alleged general purpose of

---

[181] *See Ghukasian*, 292 Cal. Rptr. 3d at 927 (insured hired contractors to cut down trees and level land, and her mistaken belief that she owned the property was not an intervening cause); *see also Albert v. Mid-Century Ins. Co.*, 187 Cal. Rptr. 3d 211, 219 (Cal. Ct. App. 2015) (rejecting insured's efforts to speculate that the harm from her deliberate act of tree trimming could have resulted from an intervening cause—the proverbial "slip of the chainsaw"—when no evidence supported that conclusion); *Delgado*, 211 P.3d at 1089 ("[C]ourts have in insurance cases rejected the notion that an insured's mistake of fact or law transforms a knowingly and purposefully inflicted harm into an accidental injury").

Meta's design choices.[182] Meta concedes that the plaintiffs allege these choices were made to "maximize engagement."[183] It is therefore unassailable that the complaints allege that Meta's conduct was a purposeful effort to operate and maximize its platforms.

To demonstrate a potential for coverage, Meta would need to identify allegations of truly inadvertent conduct analogous to the advertising misprint in *SureFire* or slip of the chainsaw in *Albert*. Meta points to no such allegations. Consequently, Meta's negligence exemplars regarding the design of its platforms describe conduct that is legally labeled as negligent but is factually intentional.[184]

Meta also addresses allegations that it "should have known" its design choices would cause harm. This phrasing does not suggest that Meta acted by mistake; rather, it establishes a foreseeable risk of harm stemming from Meta's deliberate actions.[185]

Meta's own counsel reinforced this during oral argument, stating that Meta "created an app that plaintiffs allege through our negligence cause[s] addiction and

---

[182] The Court notes the inherent tension between the holdings that "subjective intent is irrelevant to intent[,]" and California courts' inquiry into the insured's purpose in carrying out the conduct. It appears that purpose, unlike subjective intent, is something akin to the insured's undeniable, high-level motive in pursuing the course of action (e.g., sell guns, sell drugs, cut trees), while intent maps more closely onto the who/what/when/where/why/how of the purpose. The purpose is then juxtaposed against the allegedly negligent or accidental conduct.

[183] *See* Meta's Ans. Br. p. 15. Notably, Meta does not articulate an alternative intent for its conduct.

[184] *McKesson*, 2024 WL 302182, at *2 (citing *Quan*, 67 Cal. App. 4th at 598–99).

[185] *Id.*

harm."[186]  This admission confirms that while the outcome is framed as negligence, the underlying act—creating and deploying the platforms—was intentional.

### ii.    Negligence in Failing to Warn

In its table of exemplars, Meta identifies allegations that it was negligent in failing to communicate the platforms' risks.[187]  Despite the negligence gloss, these allegations reflect exclusively deliberate conduct.  Under California law, "[c]laims involving intentional or negligent misrepresentations do not constitute an accident under a liability policy,"[188] and these are fundamentally misrepresentation claims.  Moreover, these allegations describe conduct inextricably intertwined with Meta's deliberate operation of its platforms and its purposeful design choices.[189]  Hence, Meta has failed to identify any allegations that provide a basis for negligence liability independent of its intentional business decisions.

---

[186] Tr. 128:3–5.

[187] Individuals' MDL Compl. ¶ 994 ("Meta negligently misled users and their parents" into "believing [its services] were safe."); Meta's Ans. Br. p. 6 (characterizing paragraphs of the State AGs' JCCP Complaint as alleging that "[Meta] should have known its representations regarding the safety of its services were misleading.").  For clarity, Meta has not distinguished the "failure to warn" allegations from the "design choices" allegations.  Meta's arguments focused on design choices, but it is the Court's impression that a cause of action (and concomitant allegations) for a failure to warn could provide potential bases for negligence distinct from allegations regarding actively deliberate conduct.

[188] *Actavis*, 225 Cal. Rptr. 3d at 17–18 (collecting cases).

[189] *See SureFire*, 2025 WL 1287891, at *8–9 (analogizing *McKesson* to find that negligence causes of action arose out of deliberate acts when the claims were for the insured's failure to warn about the harm it was causing through its deliberate acts); *Marie Y. v. Gen. Star Indem. Co.*, 2 Cal. Rptr. 3d 135, 157 (Cal. Ct. App. 2003) (finding that an employee's failure to report ongoing sexual violence being committed by her employer did not constitute negligence separate from the employer's intentional acts because, in part, without the employer's misconduct, "there was nothing wrongful for the [employees] to report.").

46

## 2. *Step Two: Unforeseen Happening*

Having determined that Meta's conduct was deliberate under California law, the Court next considers whether the complaints identify any "additional, unexpected, independent, and unforeseen happening" that produced the damage.[190] The Court must determine whether the alleged injuries were "indirect unintended results" caused by "fortuities outside [Meta]'s control," or the direct result of Meta's allegedly deliberate conduct.[191]

Two analyses are relevant here: (1) whether the alleged harms could be characterized as unforeseen from Meta's perspective,[192] and (2) whether the harms resulted from an independent, unforeseeable act by a third party.[193]

### i.      **Harms not Unforeseeable**

Meta contends that the specific harms articulated in the allegations were unforeseeable.[194] However, the underlying allegations do not support a conclusion that these harms were fortuitous.

---

[190] *Zogenix, Inc. v. Fed. Ins. Co.*, 2022 WL 3908529, at *6 (N.D. Cal. May 26, 2022) (quoting *Actavis*, 225 Cal. Rptr. 3d at 16)).

[191] *McKesson*, 2024 WL 302182, at *3 (citing *Actavis*, 225 Cal. Rptr. 3d at 18) (finding that deaths from drug addiction were the direct result of the insured "flood[ing] the market with opioids").

[192] *See Actavis*, 225 Cal. Rptr. 3d at 18.

[193] *See id.* at 19 ("The role of doctors in prescribing, or misprescribing, opioids is not an independent or unforeseen happening.").

[194] *See, e.g.,* Tr. 117:19–118:2 (META'S COUNSEL: "I think our position is that we didn't anticipate that that content would lead to the bodily injuries that are alleged here, including eating disorders, suicidality, self-harm, other types of bodily injury that plaintiffs allege they sustained from viewing third-party content.").

An instructive, if vivid, case illustrates this analysis. In *State Farm General Insurance Co. v. Frake*, a California court rejected an insured's claim that testicular damage was unforeseeable following a deliberate kick to the groin.[195] Although the insured did not intend to cause that particular injury, the court held that by targeting the area, it was "completely foreseeable and expected" that harm would result.[196] This is a question of causal proximity: the Court must determine whether the harms articulated in the Social Media Litigation fall within the foreseeable range of outcomes from implementing a design choice intended to increase child engagement.

*Navigators Specialty Insurance Co. v. Moorefield Instruction, Inc.* provides useful—if less evocative—guidance on the question of proximity.[197] Ruling on a factual record, the court concluded that moisture damage to a floor was not unforeseeable because the insured installed carpet tiles despite knowing—though underestimating—the risk of vapor emissions.[198] The harm was not the result of "fortuity"—it was a known risk.[199] Similarly, in *McKesson*, the court found "simply

---

[195] *Frake*, 128 Cal. Rptr. 3d at 311.
[196] *Id.*
[197] *Navigators*, 212 Cal. Rptr. 3d at 258.
[198] *Id.* at 247.
[199] *Id.*; *see also Charter Oak Fire Ins. Co. v. Ultimate Concrete LLC*, 2023 WL 6370628, at *9 (S.D. Cal. Aug. 21, 2023) (finding no accident in the destruction of the Cheese Wall art installation when the wall's destruction was not a "completely unforeseen event" and the underlying complaints alleged that the insured "induced, encouraged, or supported the destruction of the Cheese Wall.").

not credible" that an opioid distributor's intended distribution methods would result in addiction and death by "mere matter of fortuity[.]"[200]

Applying this framework, the Social Media Litigation complaints adequately allege that it was not "mere fortuity" that youth-oriented platforms—deliberately designed to maximize engagement through algorithmic consumption—would result in children becoming addicted or otherwise suffering the alleged harms.

### ii.    Impact of Third-Party Content

Meta argues that because its platforms host user-generated content, the harmful nature of that content constitutes an unforeseen happening.[201]  Meta relies on *Liberty Surplus Insurance Corp. v. Ledesma & Meyer Construction Co.* for the proposition that independent tortious conduct by a third party can qualify as an accidental, unexpected consequence.[202]

In *Ledesma*, the court held that an employer's negligent hiring was an "occurrence" because an employee's sexual assault of a minor was an unforeseen, independent tortious event from the employer's perspective.[203]

---

[200] *McKesson*, 2024 WL 302182, at *4.
[201] Individuals' Master Compl. ¶ 114 (addressing harm from "thinspiration" and "fitspiration" content); RJN Ex. 2 ¶¶ 190, 389 ("extreme" third party content); School Districts' JCCP Complaint ¶ 794 (threats to school property and staff); State AGs' JCCP Compl. ¶ 489 ("harmful third-party content involving bullying and harassment").
[202] Meta Ans. Br. p. 20.
[203] *Ledesma*, 418 P.3d at 408.

*Ledesma* does not lend itself to a bright-line rule for identifying unforeseen happenings, but subsequent jurisprudence provides critical nuance. In *McKesson*, the Ninth Circuit Court rejected an opioid distributor's argument that addiction was caused "more immediately" by the doctors, pharmacists, and users, finding that these intervening acts were "functionally inevitable and entirely foreseeable results" of the insured's marketing and distribution." [204]

Similarly, in *SureFire*, the court held that because the underlying lawsuits alleged that a mass shooting was "dependent on" a gun accessory manufacturer's intentional advertising, the shooter's conduct was not a fortuitous or unforeseen happening.[205]

The allegations in the underlying litigation are more analogous to those in *McKesson* and *SureFire*. Specifically, the Social Media Litigation plaintiffs allege—and Meta concedes that they allege—that the platforms were specifically engineered to maximize engagement, including through algorithmic delivery of third-party content. It was not "mere fortuity" that these design choices led to the alleged harms. Because the creation and consumption of third-party content is the functional and intended result of Meta's deliberate platform architecture (as alleged),

---

[204] *McKesson*, 2024 WL 302182, at *3–4.
[205] *SureFire*, 2025 WL 1287891, at *10.

it is similarly not a fortuity that third parties would create engaging, yet potentially harmful, content for use on the platforms.

### 3. The Prospect of Future Allegations

The Court concludes that under California law, the allegations in the Social Media Litigation—as presently constituted—do not meet the definition of an "accident." However, this is not the end of the inquiry. Meta argues that the Insurers still owe a duty to defend because the underlying complaints *could* be amended to include coverage-triggering allegations.[206]

California courts have unequivocally held that the duty to defend is not triggered by an insured's speculation about unalleged facts or the possibility of future amendments.[207] To the extent California courts have found a duty to defend based on potential amendments, such a duty is limited to situations where the amendment would allege new causes of action "supported by the facts already pled in the complaint."[208] Because the underlying complaints here allege exclusively

---

[206] *See, e.g.,* Tr. 129:22–130:3 (arguing cases are "still in flux," so the underlying complaints could be amended to allege negligence "down the road.").

[207] *Gunderson v. Fire Ins. Exch.*, 44 Cal. Rptr. 2d 272, 277 (Cal. Ct. App. 1995) ("An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date."). To be sure, in the landmark case *Gray v. Zurich Insurance Co.*, the California Supreme Court held that an insurer had a duty to defend in part because the underlying plaintiff "could have amended his complaint to allege merely negligent conduct." 419 P.2d at 177. But in *Gray*, the court recognized an additional cause of action available upon the facts *already alleged*—it was a new legal theory, not a factual one.

[208] *Upper Deck Co.*, 358 F.3d at 615 (collecting cases).

deliberate conduct and contain no allegations of unforeseen happenings, any coverage-triggering amendment would require the introduction of entirely new facts. Accordingly, the possibility of such amendments is purely speculative and cannot defeat summary judgment.[209]

Further, as the Court concluded in its order denying the *Montrose* Stay, there are no viable assertions of extrinsic facts known to Insurers that would provide a basis for coverage beyond the current allegations in the complaints.

## D. Conclusion

Accordingly, Insurers' Motion for Partial Summary Judgment is GRANTED. Insurers do not have a duty to defend Meta in the Social Media Litigation because no allegations—whether express, inferable, or extrinsic—support a conclusion that Meta's conduct was accidental.

---

[209] *Id.*

## V. CONCLUSION

For these reasons, the Court **DENIES** Meta's Motion to Dismiss or Stay and

**GRANTS** Insurers' Motion for Partial Summary Judgment.

IT IS SO ORDERED.

_____
Sheldon K. Rennie, Judge